## JOHNSON COUNTY SAVINGS BANK, Appellant, v. L. E. HUTCHINSON, Respondent.

### Kansas City Court of Appeals, November 19, 1906.

BILLS AND NOTES: Fraud: Jewelry Contract: Breach of: Bona Fide Holder.  A manufacturing company sold jewelry on a contract whereby the merchant was not to plead failure of consideration until he had exhausted the terms of the warranty which allowed the replacing of unsatisfactory articles returned within five years, or any article not selling well could be exchanged for a different style within one year from date of invoice, and agreed to repurchase the goods on condition that a certain per cent had not been sold. After receiving the goods the merchant gave his notes payable at different intervals. The manufacturing company indorsed the notes to plaintiff. The merchant paid two of the notes and in defense, upon being sued for the third note, set up the fact that the manufacturing company had failed to repurchase the goods as agreed, but did not allege or prove that the merchant had offered to exchange the unsatisfactory and unsalable articles as provided in the contract. *Held,* the defense was insufficient and it was immaterial whether the plaintiff was the bona fide holder of the notes or whether the mere trustee of an express trust.

Appeal from Jasper Circuit Court.—*Hon. Howard Gray,* Judge.

REVERSED AND REMANDED.

*Cole, Burnett & Williams* for appellant.

(1)   The court erred in refusing to give plaintiff's

murrer asked by plaintiff at the close of all the evidence, directing the jury to find a verdict for the plaintiff. Corley v. Butler, 55 Mo. 398. (2) When plaintiff has made out a prima facie case and there is no evidence offered tending to show that plaintiff at the time he purchased the note had any information or notice in regard to the alleged defense to the payment of the note, the court should instruct the jury to find for the plaintiff. Greer v. Yosti, 56 Mo. 308; Bennett v. Torlina, 56 Mo. 309; Cloud v. Book & News Co., 23 Mo. App. 319; Wilson v. Riddler, 92 Mo. App. 335; Horton v. Bayne, 52 Mo. 531; Bank v. Skeen, 101 Mo. 683; Donovan v. Fox, 121 Mo. 247. (3) Defendant offered no evidence tending to show fraud or illegality in the inception of the note. The defense offered by defendant was insufficient and the court should have directed the jury to find for plaintiff. Jennings v. Todd, 118 Mo. 304.

*Frank L. Forlow* for respondent.

(1) It was not error for the court to refuse the peremptory instruction asked for by plaintiff at the close of all the evidence. Bank v. Hainline, 67 Mo. App. 483; Brewer v. Lindsay, 72 Mo. App. 591; Mosby v. Commission Co., 91 Mo. App. 500; Rice v. McFarland, 41 Mo. App. 488; Morgan v. Durfee, 69 Mo. 476; Powell v. Railroad, 76 Mo. 80. (2) It was not necessary for the defendant to bring home to the bank knowledge of specific facts that would impeach and invalidate the note in suit, but evidence that the holder of the note was aware of facts from which an inference of knowledge of a valid defense to the note arises has been deemed sufficient for that purpose. Investment Co. v. Tillingham, 85 Mo. App. 534; Studebaker v. Dickson, 70 Mo. 272; Whaley v. Neill, 44 Mo. App. 320.

JOHNSON, J.—Action on a negotiable promissory note brought before a justice of the peace. A trial in

the circuit court on appeal resulted in a judgment for defendant, from which plaintiff prosecutes this appeal.

On October 6, 1903, defendant, a retail grocer doing business in Joplin, executed and delivered the note in suit to the Puritan Manufacturing Company, a manufacturer of jewelry at Iowa City, Iowa. The note was dated October 1, 1903; by its terms, matured eleven months after date; was for the sum of fifty dollars and was made payable at the bank of plaintiff in Iowa City. It was one of a series of four notes given by defendant to the manufacturing company in payment of a bill of cheap jewelry purchased by defendant amounting to $200. The other three notes, each for a like amount, and all bearing the same date as the note in controversy, matured in four, seven and nine months after date respectively and, when due, were paid by defendant. Plaintiff claims that it became the indorsee for value of all of the notes on December 11, 1903, before the maturity of any of them and note in suit bears an indorsement under that date duly signed by the payee, but it is the contention of defendant properly raised in his answer that plaintiff is not a bona fide holder for value, but is acting in collusion with the payee, the real owner of the note, to prevent defendant from interposing certain defenses of avail to him as against the payee. These defenses arise out of the sale of the jewelry and in order to understand them it is necessary to state the facts relating to that transaction.

The contract of sale is in writing and was signed by defendant and delivered to The Puritan Company on September 1, 1903. It is alleged in the answer "that said notes and the note in suit were obtained from the defendant by the false and fraudulent representations of the Puritan Manufacturing Company made to the defendant, in this, that the jewelry was good merchantable goods and were giving satisfaction when they knew that they had not made a sale that was satisfactory and that

it was impossible for defendant to handle the goods at any price." No effort was made by defendant to show the making by the vendor of any oral representations to induce the sale and if any false representations were made at all they must be found in the statements and warranties embodied in the written contract. That instrument itemizes the articles sold showing their kind and quality and contains the following stipulations:

"The purchaser hereby agrees not to claim failure of consideration, or goods not according to order unless he has exhausted the terms of the following warranty and exchange obligation:

"Warranty and Exchange Obligation.—Any jewelry in this assortment failing to wear satisfactorily will be replaced by new articles free of charge if returned to us within five years. After settlement of account any article not selling readily can be exchanged for different styles or patterns or other articles in this assortment for one year from date of invoice.

"On condition that purchaser complies with all the terms of this order at the time and in the manner stated herein, the Puritan Manufacturing Company hereby agrees to purchase for cash at original invoice prices all unsold jewelry in this order remaining on merchant's hands at the end of one year from date of invoice, should not the gross profits from sale of these goods equal or exceed 33 1-3 per cent of the purchase price at that time. All goods mentioned in this order must be marked up and sold with a gross profit of at least 100 per cent.

"An itemized statement of sales made must be sent by registered mail to the Puritan Manufacturing Company every ninety days."

It is not claimed by defendant in his evidence that the goods delivered to him by the vendor were not of the kind and quality described in the itemized list, but he does say that they were so inferior in quality as to be

121 App—42

worthless as articles of merchandise and that the sale of such worthless goods by the vendor amounted in itself to the perpetration of a fraud in the procurement of the notes. Further, he says that he made a reasonable effort to sell the goods to his customers, but at the time of trial had only succeeded in making sales aggregating about $20 and in nearly every instance the purchaser returned the article purchased. Defendant made reports to the Puritan Manufacturing Company every ninety days of the sales made and demanded that the goods be taken back at the end of the year on account of their inferiority and his consequent inability to sell them, but no attention was paid to his demands. He admits, however, that he made no request of his vendor to replace the articles rejected by purchasers or found to be unsalable, nor did he make any complaint until about the time of the maturity of the third note, some seven months after he received the goods.

It is evident both from the testimony of defendant and from the contents of the written contract that both vendor and vendee knew the subject of purchase was an inferior class of goods, much of which might and likely would disclose its cheapness after brief use. Defendant received exactly what he contracted to buy. He knew, for he was so informed by the contract, that he was purchasing brass jewelry, most of which was but thinly washed with gold and knew that such wares are apt to become tarnished or brassy in appearance. He cannot claim with any show of reason that he was deceived or misled and we cannot entertain the claim that the notes were procured by false and fraudulent representations. They were not executed until after the goods were received by defendant and found to be in compliance with the terms of the contract.

Nor do we think that defendant has produced any evidence to establish the fact of a breach of the contract on the part of his vendor. It is true defendant did not

sell enough of the goods in the first year to realize gross profits equal to 33 1-3 per cent of the purchase price of all the goods, but the obligation of the vendor to repurchase the remaining goods was made dependent, not alone on the fact of defendant's inability to sell this percentage in the allotted time, but also on the performance by him of the conditions prescribed relative to the exchange of goods. The vendor undertook to replace any articles that might not wear well and this obligation was to continue for a period of five years. It also agreed that after the settlement of the account and within one year from the date of the invoice it would replace any articles "not selling readily" either with a similar article or with one of a different style or pattern. The account was settled by the delivery of the notes and during the first year defendant had the privilege of returning for exchange the articles rejected by his customers as well as those not sold, which for any reason were found to be unsalable. Had he exercised this right, his failure to sell the stipulated amount of goods in the year would have given him the right to require the vendor to repurchase all of the unsold goods "at their original invoice price." His exercise, with reasonable diligence, of the right of exchange was made a condition precedent to his right to enforce the repurchase agreement and his failure to offer for exchange the goods he found to be worthless or unsalable constituted a breach of this condition, which precluded him from enforcing a demand for reimbursement in the amount paid by him for the unsold goods. The contract expressly gave the vendor the right to be given the opportunity to replace worthless or unsalable goods before it should be required to refund any part of the purchase price and, as defendant admits he gave the vendor no such opportunity, he is in no position to claim that his vendor is in default for refusing to repurchase.

What we have said leads to the conclusion that, had

the note in suit remained in the hands of the vendor, the facts adduced by defendant would afford him no defense against its enforcement.

In this view, it is immaterial whether plaintiff is the real owner of the note or is seeking to enforce it for the use and benefit of the original payee. The indorsement and delivery of the note to plaintiff vested in it the legal title and enables it to maintain this action in its own name regardless of the character of its real interest in the property. The execution and delivery of the note by defendant and its indorsement and delivery by the payee to plaintiff being conceded facts, it follows that the learned trial judge erred in refusing to give the peremptory instruction requested by plaintiff.

The judgment is reversed and the cause remanded. All concur.